Wayne Hawn
WEIDNER & ASSOCIATES, INC.
330 L Street, Suite 200
Anchorage, Alaska  99501
(907) 276-1200

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re ) | |
| ) | Case No. A-89-095 CI (HRH) |
| the EXXON VALDEZ ) | (Consolidated) |
| ) | |
| ) | |
| THIS DOCUMENT RELATES TO ) | |
| NAUTILUS MARINE ENTERPRISES ) | |
| AND COOK INLET PROCESSING ) | |
| ) | |

MOTION TO PRECLUDE THE TESTIMONY OF BRUCE BUDGE, GARY GREENWOOD, JAMES ANDERSON and RAY HILBORN

This Court has ordered a truncated discovery period at the expense of plaintiffs' time to conduct depositions and discovery and produce rebuttal reports (and permitted Exxon to depose Plaintiffs' experts prior to producing their own expert reports) as a result of misstatements made by Exxon's attorney, Charles Diamond, to the Court during an in chambers conference in April of 2006.  Mr. Diamond erroneously informed the Court that Exxon could not comply with the Court's order that it produce its own expert reports by April 21, 2006 <u>because Exxon's experts had not yet begun work</u> or, as to some experts, had not even been identified by Exxon yet.  These statements shocked plaintiffs' counsel, and, it appeared, the Court.  The statements resulted in substantial concessions by the plaintiffs and forced the plaintiffs to agree to an extremely short period to conduct discovery into Exxon's expert reports, hire rebuttal experts, bring them up to

speed, and draft rebuttal reports, and to functionally and temporarily allow Exxon to depose plaintiffs' experts before Exxon's experts' reports were completed. This in turn afforded Exxon great tactical advantage. The statements by Mr. Diamond were not true. Moreover, the misrepresentations may have been intentional or at a minimum appear to be reckless, as Mr. Diamond indicated that he had actual knowledge of the status of Exxon's experts' work.

The statements were proven to be misrepresentations when they were contradicted by Exxon's own experts during their depositions. Bruce Budge, Exxon's damages valuation expert testified at his deposition that <u>he began working as soon as he received Plaintiffs' valuation reports in September, 2005 for Nautilus and October 2005 for Cook Inlet</u>. (Budge 21 to 22). Mr. Budge further stated that, as of April, (when Mr. Diamond told that Court Exxon's experts had not yet begun) he was actually <u>at least</u> 2/3 completed with his reports. (Budge 23 to 24). He testified that <u>he had been reviewing documents for six to eight months prior to his deposition in June, including reviews in counsel's office in April</u>. (Budge 205-207). That he had received a draft of Gary Greenwood's report in early April, [the very month in which Mr. Diamond told the Court that the experts had not even begun to work on the case] (Budge 200). Mr. Budge testified that he knew of Hilborn and Deriso's conclusions well before he received a draft of their reports in May. (Budge 200-203).

Gary Greenwood, likewise, testified that:

> A.    <u>I started working on the CIP report when I received the damage claim produced by BAS and that happened, I believe, in early, maybe late 2005 or early 2006.</u>
>        I don't remember exactly when I got that report. And after that point I began reviewing documents, and at some point in there I started preparing responses to specific points that BAS was proposing.
> Q:    (BY MR. WEIDNER)  All right. The – I'm going to show you Exhibit 5 to Mr. Budge's deposition. <u>This is the BAS report</u>

> on Cook Inlet. It shows a date of October 2<u>nd</u> – or October 12, 2005.
> <u>Is that the report you are referring to?</u>
> A.     Without going through and looking at every page and reading it, it probably is. <u>It appears to be.</u>
> Q.     Okay. All right. So you - you basically got started on the – on your analysis as to the Cook Inlet shortly after October 12 of 2005?
> ...
> THE WITNESS: <u>I believe I received that report in either late December of 2005 or sometime early in 2006</u>. (Emphasis Added)

Greenwood pages 26 to 28.

Mr. Greenwood also testified that he had believed he was done with a preliminary draft in April. (Greenwood page 29). He indicated that <u>by March or April, he had "quite a bit" of his analysis competed</u>. (Greenwood page 30).

<u>With respect to Nautilus Marine, Mr. Greenwood indicated that: "I began in late 2005</u>." (Greenwood page 32). He also stated that by March or April, he had completed about the same amount on NMI as he had on CIP. (Id. page 32-33). Contrary to the representations to the Court made by Mr. Diamond in April, <u>Mr. Greenwood had started drafting by March, and had done "quite a bit" of work by that time as to both CIP and NMI</u>. (Id. page 34).

James Anderson, Exxon's Market Price Impact Expert, stated that <u>he worked on his report, and "really started digging into it" over Christmas break, some four months before the April in-chambers conference</u>, and well before the Court's April 21, 2006 disclosure deadline. (Anderson 25-26). Indeed, he stated that he worked on assembling data in January and February, and <u>had his report completed (except for editing for grammar) sometime in March</u>. (Anderson 25-26). <u>Again, when Mr. Diamond told the Court that Exxon's experts had not even begun their work</u>, (sic) thereby gaining an enormous litigation advantage by depriving Plaintiffs of time to rebut those reports and conduct discovery, and to allow Exxon to depose plaintiffs' experts

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK  99501
(907) 276-1200  Fax (907) 278-6571

Motion to Preclude

3

before the defendant expert reports were completed and received, <u>Mr. Anderson was, in fact, done</u> (except for editorial edits).  Moreover, despite their obligation to produce working papers, Exxon's attorney refused to produce Mr. Anderson's Excel spreadsheets (which were available to the witness on his computer in his hotel approximately two blocks from the deposition) used to produce graphs in his report such that they could be used to cross-examine Dr. Anderson at his deposition.  (Anderson 23-24).  Exxon's attorney stated "I don't think we are going to make those available now.  I think that will take too much time.  You can have a request for them, but besides that, we're not going to make them available."  (Anderson 24).

      Ray Hilborn, testified that, in formulating his opinion, he relied upon a conversation that he had had with another Exxon expert, Rick Deriso.  However, as this conversation took place in the presence of Exxon's counsel, he was instructed not to answer questions about the conversation or what information was imparted.  Thus, Exxon's counsel has, once again, used the tight discovery calendar to its advantage as, plaintiffs' rebuttal reports had to be completed without all necessary information.

      Prior to these depositions, in April of 2006 Nautilus Marine Enterprises and Cook Inlet Processing approached the court for an order compelling Exxon to produce their expert reports. That motion was based upon the fact that Plaintiffs had produced their expert reports to Exxon in September and October of 2005 and yet Exxon had persistently delayed in producing their and own expert reports thereby hindering discovery.

      Exxon responded and argued that the trial should be postponed, and that Exxon should be permitted to depose Plaintiffs' experts prior to producing its own expert reports.

      The court refused to postpone "the day of reckoning," by postponing the trial date, and ordered Exxon to immediately turn over its expert reports.  The Court indicated that "<u>the court is</u>

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK  99501
(907) 276-1200 Fax (907) 278-6571

Motion to Preclude

4

<u>unpersuaded that there is any justification for Exxon withholding its expert reports, and they shall be disclosed forthwith in accordance with Rule 26(a)(2), Federal Rules of Civil Procedure, and in no event later than April 21, 2006</u>." (Emphasis Added)  <u>Order Revised Trial Schedule</u>, Filed 4/11/2006, Document 8242.

Exxon moved to reconsider this court's order based upon the argument that Plaintiffs had experienced delays in providing Exxon with copies of "supporting materials" for their expert opinions.  Plaintiffs pointed out that such "supporting materials" contained information that had been previously made available to Exxon, or that was readily available, and that the delay in producing the supporting materials did not impact Exxon's ability to produce its expert reports, especially as Exxon had possession of the Plaintiffs' experts' reports for approximately six months, and especially as to Exxon's economic analysis of damages, for which it gathered data from the plaintiffs in early 2005.

The Court ordered an in chambers status conference to discuss the matters with counsel. When asked why Exxon could not produce its expert reports, counsel for Exxon, Mr. Charles Diamond erroneously informed the court and the parties that Exxon could not comply with the court's order to produce its expert reports on or before April 21 <u>because Exxon's experts had not yet begun their expert reports</u>, (sic) and that, indeed, Exxon was not sure of the final identity of their experts.  (sic) The Court appeared surprised at this revelation, as was Plaintiffs' counsel. Plaintiffs' counsel, in response to an inquiry from the Court as to what should be done in light of the representations of Mr. Diamond, that Exxon's experts had not yet begun their reports, then reluctantly agreed to allow the Court to further accommodate Exxon as to its reports, which was apparently necessary based on Mr. Diamond's representations, while still adhering to that trial date, even though it would prejudice plaintiffs as to their own experts, and/or to the depositions

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK  99501
(907) 276-1200  Fax (907) 278-6571

Motion to Preclude

5

of Exxon's experts.

The court, upon being confronted with the startling news (but in fact untrue) that Exxon's experts had not yet begun their work in preparing their own expert reports in April of 2006, despite Exxon's possession of plaintiffs' expert reports for some six months, had little choice but to grant Exxon's motion for an extension thereby making Exxon's expert reports due on June 2, 2006.[1]  As a necessary result of this late production the Court was forced to vastly compress the remaining pretrial due dates and times, including, importantly, plaintiffs' time to review Exxon's expert reports prior to deposing those experts, Plaintiffs' experts' time to analyze and research Exxon's reports and the depositions of those experts, and to produce their own rebuttal expert reports and the plaintiffs' time to conduct written discovery and depositions of Exxon's experts.

This resulted in a situation in which Exxon obtained the tactical advantage it had been seeking, i.e., to depose plaintiffs' experts before disclosing their expert reports, and plaintiffs were forced to depose Exxon's experts less than two weeks after the production of their expert reports due to such misstatement in chambers.  This time limitation was further complicated by the fact that, rather than producing the approximately three experts which Exxon represented it would at the status conference before Judge Holland, Exxon produced six expert reports.

Indeed, in plaintiffs' reply to Exxon's motion to reconsider, plaintiffs argued that Exxon had not produced affidavits from its experts indicated that they needed more time.  This evidence, apparently, was not produced because the experts were, in fact, largely done.  Plaintiffs also argued that the documents that Exxon was allegedly waiting on had nothing to do with Exxon's biological reports, and those reports should, at a minimum, be produced immediately. (Document 8252 pages 1-2).

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK  99501
(907) 276-1200 Fax (907) 278-6571

---

[1] Likewise, based on the untrue representations of Mr. Diamond, Mr. Weidner had little choice but to agree to the Court granting Exxon's request for more time, to avoid potential error.

Motion to Preclude

6

It has now been established that Exxon's representations to the Court at the April in chambers conference regarding the preparation of its own experts, the representations relied upon by the Court and plaintiffs' counsel to the detriment of the Plaintiffs, were not correct.

In fact, at his deposition in this matter, Exxon's damages valuation expert, Bruce Budge, testified that he had received plaintiffs' expert's damage reports in September and October of 2005, immediately after their completion, <u>and began work at that time</u>.  <u>He indicated that in April of 2006, when Exxon's attorneys represented to Judge Holland that their experts had not yet begun work, and that it was impossible to produce reports to the plaintiffs in a timely manner, Mr. Budge was, in fact, at least two-thirds completed with his report.</u>  <u>James Anderson stated that his report was done in March</u>.  Thus, through its misrepresentations to the Court, and to plaintiffs' counsel, Exxon has gained an enormous litigation advantage.

Normally an appropriate remedy for such misconduct may be to allow plaintiffs an additional opportunity to conduct discovery, obtain additional experts, and submit additional expert reports and a rebuttal reports.  However Exxon's misrepresentations led directly to he drastically shortened time schedule in this case.  Moreover, as the Court well knows, it is crucial to adhere to the present trial date; which Exxon has been attempting to continue.  This time schedule was entered over plaintiffs' objections (except to the extent that Plaintiffs' counsel reluctantly agreed to agree that the Court should and/or must accommodate Exxon at the in chambers conference in light of Mr. Diamond's untrue representations), but was established as the only way to keep the currently existing trial date, which Exxon had attempted to vacate.  At this point any vacation of the trial date or postponement of the trial will reward Exxon for its misconduct and give it what it wanted in the first instance, more delay.  It will also further prejudice the plaintiffs and further delay justice in this case which has been pending for 17 years

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK  99501
(907) 276-1200  Fax (907) 278-6571

Motion to Preclude

7

without a trial.

This misconduct has been further amplified by Exxon's attorney's conduct at the Exxon expert depositions.  As the court is aware, it ordered Exxon to make its experts available for depositions on a shortened time frame, during the first two weeks in June, and immediately after the production of their expert reports.  This time frame was established due to the fact that plaintiffs were only given 30 days after the production of Exxon's expert reports to analyze those reports, conduct the depositions, examine the facts, write and submit their own rebuttal expert reports.

During the deposition of Exxon's expert Ray Hilborn, Mr. Hilborn indicated that, in formulating his opinions, he relied in part upon a conversation he had with another Exxon expert, Mr. Deriso.  Despite Exxon's obligations to conduct discovery in good faith, because this conversation took place in the presence of an Exxon attorney, Exxon's attorney at the deposition of Mr. Hilborn instructed Mr. Hilborn not to answer questions as to what Mr. Deriso told Mr. Hilborn that Mr. Hilborn was, in turn, relying upon.

Exxon's attorney instructed the witness to <u>not</u> answer questions regarding communications between Dr. Hilborn and other experts for the Exxon defendants, e-mails between Dr. Hilborn and Exxon counsel, and communications between Dr. Hilborn and Exxon counsel as to "amplifications" of his draft report.   See Dr. Hilborn deposition at pgs. 19, 115-123, 126 attached hereto.

<u>Video Deposition of Ray W. Hilborn of 6/13/06</u>
…
Q. All right.  Have you been retained as an expert in this case?
A. Yes.
Q. And by whom have you been retained?
A. Attorneys for Exxon.
<u>Page 19, lines 9-13</u>
…

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK  99501
(907) 276-1200 Fzx (907) 278-6571

Motion to Preclude

8

Q. What did you discuss with Mr. Duriso?
A. Well, we always met with the attorneys present and he basically explained to me the analysis he had done.

Page 115, lines 18-21

…
Q. Who else was present other than you and Mr. Duriso?
A. Meetings in Seattle, attorneys and a couple representatives of Exxon or Exxon contractors; <u>meeting in Los Angeles was a large meeting with eight or ten or more – ten more attorneys and six or seven scientists</u>.  (Emphasis added).

Page 116, lines 9-14

…
Q. (BY MR. WEIDNER) <u>What was the purpose of the large meeting</u>?
MS. CHRISTOFFERSON: Objection.  Calls for speculation.  <u>And I instruct you not to disclose information that you would have received from the attorneys</u>.
THE WITNESS: It was basically to review the statements that had been prepared and to discuss the –the issues.
Q. (BY MR. WEIDNER) What do you mean, the statements that had been prepared?
A. I believe at that time my – my report and Duriso's report were either in draft or final form.
Q. And—go ahead.
A. And—and there were presentations on the analysis that had been done.
Q. Presentations given by whom?
A. Several of the people present.
Q. Who—who gave presentations?
A. Duriso, Pearson, Elston, the other woman whose name escapes me at the moment, and Kenny Rose.  That's the other person who was there.
Q. Who is that?
A. He's a professor at the Louisiana State University.
Q. And what's his area of expertise?
A. Fisheries ecology.
Q. What—what presentation did he give?  What—what did he say?
A. He made a presentation on the work he'd been doing, on the trophic dynamics of the Prince William Sound ecosystem.
Q. On what?
A. The trophic dynamics.
Q. What does that mean?
A. Food web.
Q. Did he—did he present you with any written material?
A. No.
Q. How long was his presentation?
A. Fifteen minutes.
Q. Did he show slides?
A. I believe he did.
Q. And what, in essence, did he tell you?  What was—what was the

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK  99501
(907) 276-1200  Fax (907) 278-6571

Motion to Preclude

9

> substance of his presentation to you?
> A.   He was looking at the interaction between different consumers of zooplankton in the—in the Prince William Sound ecosystem.
> Q.   What do you mean, the interaction of different consumers of zooplankton?
> A.   The amount of food consumption, diet, et cetera.
>
> Q.   <u>Did he express any information or give you any information as to whether there was any competition for zooplankton between the juvenile pink salmon and the herring</u>?
>   MS. CHRISTOFFERSON:  I'm—actually <u>I'm going to object to this whole line of questioning in that the lawyers were there and these were consulting experts, and I don't think you're entitled to go into this which is barred by the discovery order.</u>
>   <u>And it also involves—because it involves attorneys there distributing information that were prepared at the request of counsel</u>.
>   MR. WEIDNER:  Well—
>   MS. CHRISTOFFERSON:  So I—I let you inquire into meetings.  <u>I'm not to going to let you inquire further into this</u>.
>   MR. WEIDNER:  Yeah.  Well, I think we're entitled to, counsel.
> Q.   (BY MR. WEIDNER)  Please answer.
>   MS. CHRISTOFFERSON:  <u>I instruct the witness not to answer</u>.
>   MR. WEIDNER:  Are you going to answer?
>   MS. CHRISTOFFERSON:  Are you going to follow my instructions?
>   THE WITNESS:  <u>I'll follow her instructions</u>.

<u>Pages 116, lines 23-25, and pages 117-119, lines 1-25</u>  (Emphasis added).

> …
> Q.   (BY MR. WEIDNER)  All right.  Well, who—<u>what other presentations were made?  What were the subjects of the presentations</u>?
> A.   <u>Elston made a presentation on disease</u>.
> Q.   <u>Who is Elston</u>?
> A.   <u>Ralph Elston.  He's a consultant to Exxon</u>.

<u>Page 120, lines 19-24</u>  (Emphasis added)

> …
> Q.   What's his area of expertise?
> A.   Fish disease, as near as I—as far as I know.
> Q.   Well, what—<u>the presentation related to what type of disease</u>?
>   MS. CHRISTOFFERSON:  <u>I'm going to object and instruct the witness not to answer.  You're not allowed to inquire into this where other attorneys are present.</u>
> Q.   (BY MR. WEIDNER)  Please answer.
>   MS. CHRISTOFFERSON:  We have—<u>the presentations were prepared at the request of counsel and you're not allowed to answer—request information</u>.
> Q.   (BY MR. WEIDNER)  <u>Please answer</u>.
>   MS. CHRISTOFFERSON:  <u>No.  I instruct the witness not to answer</u>.
>   THE WITNESS:  <u>I'll follow her instructions</u>.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK  99501
(907) 276-1200  Fax (907) 278-6571

Motion to Preclude

Page 121, lines 4-19  (Emphasis added).
…
> Q.     (BY MR. WEIDNER)  How many changes did you make in your report between your initial draft and your final version?
> A.     I don't—I don't have any idea what the number is.
> …
> Q.     Any changes that relate to any substantive changes in terms of whether you expressed an opinion, didn't express an opinion, changed an opinion, modified an opinion, further amplified an opinion, restricted an opinion, or narrowed an opinion.

Page 122, lines 14-25  (Emphasis added).
…
> THE WITNESS:  I'd say that all of the changes were amplification of opinion, rather than—there were no changes of opinion.
> Q.     (BY MR. WEIDNER)  And how many amplifications were there?
> A.     I can think of perhaps three.
> Q.     And what were those?
> A.     Exxon's attorneys asked me to—
> MS CHRISTOFFERSON:  Don't disclose information—
> THE WITNESS:  Oh, okay.
> MS. CHRISTOFFERSON:  --that Exxon attorneys told you.

Page 123, lines 3-15  (Emphasis added).

…
> Q.     Okay.  In the course of you writing your report, how many times did you have contact with the Exxon attorneys?
> A.     Perhaps two to four.
> Q.     Okay.  Had there been written communications between you and the Exxon attorneys about your reports?
> A.     We had e-mail exchanges.
> Q.     How many?
> A.     I'd say two to four.
> Q.     And what was—what was the subject of those e-mail exchanges?
> MS. CHRISTOFFERSON:  Objection.  I instruct the witness not to disclose the substance of any e-mail communication with the attorneys.
> MR. WEIDNER:  Will you answer?
> THE WITNESS:  No.  I'll follow the instruction.

Page 126, lines 2-18  (Emphasis added).
…
> MR. WEIDNER:  Counsel, I don't have any further questions at this time but I'm going to preserve my position—I think I already have—of record that we're entitled to answers to those questions that you instructed him not to answer.
> We intend to preserve our right to move to conclude his testimony or any related experts' testimony as a result of failure to testify to other relevant— relevant areas of inquiry.
> MS. CHRISTOFFERSON:  Okay.  And our position is that that's

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK  99501
(907) 276-1200  Fax (907) 278-6571

Motion to Preclude

11

>excluded from discovery by stipulation regarding expert discovery DM 171 which relates to all cases in the In re Exxon Valdez.

Page 219, lines 5-17  (Emphasis added).

Thus, Mr. Hilborn testified that he relied, in part upon information received during a conversation with Mr. Deriso and meetings with other Exxon experts, and Exxon refused to allow Mr. Hilborn to answer questions about those conversations, forming, in part, the basis of his opinion.  Thus, Exxon has further denied plaintiffs the opportunity to conduct discovery into the basis of Exxon's expert witnesses' opinions and has further compounded the prejudice to plaintiffs originally caused by Exxon's own misconduct and misrepresentations to the Court, which resulted in plaintiffs being faced with losing the trial date for having a vastly shortened and truncated discovery process.

Therefore the only applicable remedy which would not reward Exxon for its own misconduct and thereby give Exxon what it originally wanted in this case i.e. a further delay in the "day of reckoning" is to preclude Exxon's experts, the subject of Exxon's wrongdoing, from testifying.  That is Exxon's expert Bruce Budge, who originally received plaintiffs' expert reports in September and October of 2005, and who immediately began work on his own expert reports, in direct contradiction of the misrepresentations made by Mr. Diamond to this Court in April of 2006, should be precluded from testifying.  James Anderson, who was largely done by March, 2006 should be precluded from testifying.  Gary Greenwood, who gave a draft copy of his report to Mr. Budge in April 2006, should be precluded from testifying.  Ray Hilborn, who has been instructed by Exxon's attorney not to testify regarding conversations that partially formed the basis of his expert opinions, should be precluded from offering testimony at trial in this matter.

//

//

The court should enter such relief, or such other sanctions as the Court deems just.

RESPECTFULLY SUBMITTED this 18th day of August, 2006.

WEIDNER & ASSOCIATES, INC.
Counsel Cook Inlet Processing
& Nautilus Marine

_s/Wayne D. Hawn
WEIDNER & ASSOCIATES, INC.
330 L Street, Suite 200
Anchorage, AK  99501
Phone (907) 276-1200
Fax (907) 278-6571
E-mail: whawn@weidnerjustice.com
ABA 9311077

CERTIFICATE OF SERVICE
I hereby certify that on August 18[h], 2006 a copy of the foregoing **MOTION TO PRECLUDE THE TESTIMONY OF BRUCE BUDGE, GARY GREENWOOD, JAMES ANDERSON and RAY HILBORN** was served electronically on Doug Serdahely, Lloyd Miller, David Oesting, Thomas P. Amodio.

_s/ Wayne D. Hawn_____